**GENERAL REFRACTORIES COMPANY, Appellant,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA, CCI Insurance Company (as Successor to Insurance: Company of North America), Century Indemnity Company (as Successor to CCI Insurance Company, as Successor to Insurance Company of North America), Appellee.**

Superior Court of Pennsylvania.

Argued April 5, 2006.

Filed Aug. 18, 2006.

Barry L. Katz, Bala Cynwyd, for appellant.

Gregory T. LoCasale, Philadelphia, for Century Indemnity, appellee.

BEFORE: STEVENS, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This is an appeal from an order granting Appellee's summary judgment motion, and dismissing the breach of contract action by which Appellant sought to assert a claim that the one month extension of its excess liability policy operated to provide an additional year's coverage. We affirm.

¶ 2 Appellant, the insured under an Excess Blanket Catastrophe Liability Policy issued by Appellee, sought to extend for one month the term of the policy, which ran from October 25, 1971 to October 25, 1974. In providing coverage for claims arising out of Appellant's manufacture, distribution, and sale of products containing asbestos, the policy was limited to $5 million per occurrence with a $5 million aggregate for each policy year. The language of the policy specified that "[i]f the policy is issued for a period of three years, the limit of [Appellee's] liability shall apply separately to each consecutive policy year thereof." (Policy at 6, ¶ 10).

¶ 3 Appellant sought the one month extension to acquire new coverage from another insurer, since the cost of Appellee's protection on renewal had risen significantly. To this end, Appellant's broker, Johnson and Higgins, prepared a binder, signed by an agent of Appellee, which read as follows:

It is hereby agreed that [Appellee's] Excess Blanket Catastrophe Liability Policy No. XBC 82–90 is extended for 30 days. Extension is effective October 25, 1974 through November 25, 1974. Terms and conditions of policy No. 82–90 will govern for [sic] the 30 day exten-

sion. It is also agreed that the premium for the 30 day extension will be figured using the sales for the period times the rate shown on Policy No. 82–90.

(Insurance Binder, dated 10/22/74). In December of 1974, Appellee issued a policy endorsement which provided that "In consideration of an additional premium to be determined at audit, it is hereby agreed that the policy period is extended to 11/25/74." (Endorsement, dated 12/19/74).

¶ 4 Some twenty years later, Appellant sought coverage under the policy for asbestos related personal injury claims which had begun to be lodged against it beginning in the early 1980s. After Appellee had paid the policy limits of $15 million, Appellant asserted that the one month extension entitled it to an additional $5 million in coverage. When Appellee declined to provide either indemnity or reimbursement of expenses, Appellant instituted suit for breach of contract, and the parties proceeded under cross motions for summary judgment resulting in the order underlying this appeal.

¶ 5 On appeal, Appellant contends that the trial court erred in (1) granting Appellee's motion for summary judgment because expansion of the policy year by thirty days created a new term providing additional coverage up to the annual policy limits; (2) declining to find the policy language ambiguous; and (3) considering some items of extrinsic evidence while rejecting others. We find none of Appellant's arguments persuasive.

In reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or manifest abuse of discretion. Nevertheless, the scope of review is plenary; the appellate court shall apply the same standard for summary judgment as the trial court . . .

The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159, 1165 (1997) (citations omitted). The interpretation of a contract is a question of law. Accordingly, our standard of review is *de novo.* *See Swords v. Harleysville Insurance Companies,* 584 Pa. 382, 883 A.2d 562, 567 (2005).

■ ¶ 6 The trial court construed the policy terms according to the dictionary definitions of the words "extended" and "extension," based on the principle that

[t]he intent of the parties to a written contract is deemed to be embodied in the writing itself, and when the words are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement. Indeed, the focus of interpretation is upon the terms of the agreement as **manifestly expressed**, rather than as, perhaps, silently intended.

*Delaware County v. Delaware County Prison Employees Independent Union,* 552 Pa. 184, 713 A.2d 1135, 1137 (1998) (citations and quotation marks omitted) (emphasis original). The court noted that "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and [the court] may inform [its] understanding of these terms by considering their dictionary definitions." *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100, 108 (1999) (citations omitted). Applying the custom-

ary meanings of the terms "extension" and "extended," the court concluded that "the one month Extension must be read as simply an elongation of the Policy period and nothing more." (Trial Ct. Op. at 3). We see no reason to disagree.

¶ 7 Appellant insists that because neither the binder nor the endorsement contained language specifically limiting Appellee's liability, the effect of the thirty day period for which it paid was to set a new monetary limit of coverage, not simply to prolong the duration of the prior policy period. Although Appellant contends that its interpretation is supported by ¶ 10 of the policy, cited above, it points to nothing which equates a one month extension with a new policy year; again, the language of the policy is neither arcane nor in any way mysterious. As the Declaration portion of the policy makes clear, the policy period, from October 25, 1971 to October 25, 1974, encompasses three years, each one of which constitutes a policy year. (Policy Declaration of 10/26/71). The endorsement specifically extends the life of Policy 82–90, the term of which was defined within its four corners, for an additional 30 days. Nothing in the language of the endorsement created a new policy term.[1]

■ ¶ 8 Further, as Appellant concedes, the trial court determines whether ambiguity exists in contract language. *Lang v. Meske,* 850 A.2d 737, 740 (Pa.Super.2004). "The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation." *Id.* (citation omitted). Moreover, "[w]hen the terms of a written contract are clear, this Court will

---

**1.** Even assuming that by virtue of the premium paid, the extension afforded some additional amount of coverage, the premium was, under the terms of the binder, prorated. Thus any surplus coverage it provided would also be prorated. However, nothing in the language of the policy, the endorsement, or the binder can be construed to achieve a result other than that which the trial court reached; Appellant did not bargain for partial coverage then, nor even suggests it as an alternate remedy now.

not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used." *Id.* Appellant's suggested reading finds no support in the language of the policy.

¶ 9 Germane to this discussion is the uncontested fact that the time span of the policy is not at issue, only the amount of coverage. The extension meant only that the policy year, and with it the original monetary limit, was protracted to encompass liability engendered during that period, not to increase the amount available to recompense such liability. Thus had Appellant been found liable only to the extent of the $5 million attributable to the 13 month policy year, the problem would not have arisen. The point is that Appellant was not without coverage during the extension to thirteen months, but only that its coverage of $5 million for that period remained constant over a variant time frame. This interpretation is consistent with both ¶ 10 and the endorsement. Thus the trial court properly construed the policy language. Equally properly, the court declined to find an ambiguity where none existed, despite Appellant's insistence that a latent ambiguity remained to be discovered.

¶ 10 Appellant also argues that the trial court erred in considering some items of extrinsic evidence while rejecting others. In posing the question of whether the court acted properly in this instance, Appellant assumes that some recourse was had to materials outside the four corners of the policy because the meaning of the policy language was unclear. However, "[o]nly if the words used [in a contract] are ambiguous may a court examine the surrounding circumstances to ascertain the intent of the parties." *Regscan v. Con– Way Transportation Services, Inc.,* 875 A.2d 332, 337 (Pa.Super.2005) (quoting *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192, 1194 (1987), *appeal denied,* 517 Pa. 607, 536 A.2d 1331 (1987)). As already determined, the court here found no difficulty in interpreting the policy language, and, despite Appellant's insistence to the contrary, did not resort to extrinsic evidence.

¶ 11 Interestingly, among the items referred to as extrinsic evidence, Appellant lists the binder prepared by its agent. The binder contains a heading which reads as follows: "This Endorsement, effective 10/25/74 [2] **Forms a part of Policy No. XBC 82 90** Issued to: General Refractories Company." (Binder dated 12/18/74) (emphasis added). Appellant may not now disclaim it as extrinsic to the policy.

¶ 12 Order affirmed.

2. Appellant argues that the beginning date of the binder "makes no sense if all it does is to extend the end date." (Appellant's Reply Brief at 15). However, the binder supplied temporary coverage for a designated period after the termination of the original policy period, making both beginning and end dates necessary.