■ UNION CARBIDE CORPORATION, Respondent, v AFFILIATED FM INSURANCE COMPANY et al., Defendants, and CONTINENTAL CASUALTY COMPANY et al., Appellants. UNION CARBIDE CORPORATION, Respondent, v AFFILIATED FM INSURANCE COMPANY et al., Defendants, and CONTINENTAL CASUALTY COMPANY et al., Appellants. [891 NYS2d 347]—

We agree with Judge Martin's analysis in *Maryland Cas. Co. v W.R. Grace & Co.* (1996 WL 169326, 1996 US Dist LEXIS 4500 [SD NY 1996]), as the relevant terms of the multiyear excess policies are indistinguishable from those in *W.R. Grace.* A declaration in each multiyear policy specifies a dollar amount as the "limit of liability" under the policy and states that the limit applies to each occurrence and "in the aggregate." The multiyear excess policies in *W.R. Grace* contained essentially the same language. Like the insured in *W.R. Grace,* Union Carbide seeks "to alter the plain terms of the contract by adding the word 'annual' where it simply does not otherwise exist" (1996 WL 169326, *5, 1996 US Dist LEXIS 4500, *15; *see also Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470, 475 [2004] ["courts may not by construction add or excise terms" (internal quotation marks omitted)]). As the phrase "in the aggregate" is unambiguous (*W.R. Grace*), it is of no moment that the excess policies do not contain language elaborating on the phrase that expressly negates in annualization (*see Nissho Iwai Europe v Korea First Bank,* 99 NY2d 115, 121-122 [2002] ["ambiguity does not arise from silence, but from what was written so blindly and imperfectly that its meaning is doubtful" (internal quotation marks omitted)]). Accordingly, we reject Union Carbide's argument that because the excess policies are silent as to whether the limit of liability is annualized, one must look to the underlying policy due to the "follow form" clause in the excess policies. Moreover, the subscription pages of the excess policies state "[t]*his policy being for* [the specified dollar amount], each of the signatories assumes for its Account their [*sic*] indicated quota share amount of the *total* [the specified dollar amount] limit of liability" (emphasis added). This language, to which there was no analogue in *W.R. Grace,* provides additional support for the conclusion that the limit of liability stated in each excess policy is not an annual amount.

Union Carbide's effort to distinguish *W.R. Grace* is unpersuasive. Here, each multiyear excess policy states that the insurance it affords follows form to an underlying policy (a policy with annual limits) "subject to the declarations set forth below"

(one of which, as discussed above, sets forth the limit of liability). In *W.R. Grace*, each multiyear excess policy also stated that the insurance it afforded followed form to an underlying policy (at least one of which had annual limits), but the follow-form clause stated that the excess insurance followed form "except for limits" (1996 WL 169326, *3, 1996 US Dist LEXIS 4500, *10). Contrary to Union Carbide's position, there is no substantive distinction between the "except for" and the "subject to" clauses. The most that can be said is that reading the excess policy to contain the same (i.e., annual) limits of liability as the underlying policy is expressly precluded by the former clause, but is only implicitly precluded by the latter clause. Both clauses, however, plainly state a rule of priority pursuant to which terms of the excess policy governing certain matters control over the terms of the underlying policy governing those matters. If the "subject to" clause does not perform the office of negating terms of the underlying policy that differ from those of the referenced declarations, it is not clear that the clause performs any function (*see Suffolk County Water Auth. v Village of Greenport*, 21 AD3d 947, 948 [2005] ["an interpretation which renders language in the contract superfluous is unsupportable"]; *Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69 [1999] ["(c)ourts should construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract"]).

The cases on which Union Carbide relies (*Travelers Cas. & Sur. Co. v Ace Am. Reins. Co.*, 392 F Supp 2d 659 [SD NY 2005], *affd* 201 Fed Appx 40 [2d Cir 2006]; *Commercial Union Ins. Co. v Swiss Reins. Am. Corp.*, 413 F3d 121 [1st Cir 2005]; *American Employers' Ins. Co. v Swiss Reins. Am. Corp.*, 413 F3d 129 [1st Cir 2005]) are distinguishable. In each of these reinsurance cases, the relevant language of the reinsurance certificates differs significantly from that of the excess policies; in the two First Circuit decisions, the court expressly relied in part on the follow-the-fortunes doctrine (*Commercial Union*, 413 F3d at 127-128; *American Employers'*, 413 F3d at 137).

On the extension issue, the burden of proving coverage is on Union Carbide (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 218 [2002]), and the policy is ambiguous as to whether it is entitled to $5 million in coverage from Continental for the extended, or "stub," two-month period in question (*see Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178, 1216-1217 [2d Cir 1995], *mod on other grounds* 85 F3d 49 [2d Cir 1996]; *United States Min. Prods. Co. v American*

*Ins. Co.*, 348 NJ Super 526, 559, 792 A2d 500, 525 [App Div 2002]). Thus, given the ambiguity, Union Carbide failed to meet its burden of demonstrating that it is entitled to the full annual limit for the two-month extension and partial summary judgment should not have been granted (*see Uniroyal, Inc. v American Reins. Co.*, 2005 WL 4934215 [NJ Super Ct App Div 2005]).

Concur—Sweeny, Nardelli, McGuire and DeGrasse, JJ.

Tom, J.P., dissents in part in a memorandum as follows: Plaintiff obtained general liability and marine insurance from nonparties Employers Liability Assurance Corp. and Appalachian Insurance Co. These underlying policies each provide an "annual aggregate" limit of liability. Reinsurance (denominated "excess policies" by defendants) was provided by appellant insurers under a second tier of policies, each having a three-year duration. Each such excess policy, issued by a group of participating insurers, includes a "follow the form" clause, stating that it "shall follow all the terms, insuring agreements, definitions, conditions and exclusions" of the applicable underlying insurance policy.

Unlike the underlying policies, the excess policies do not expressly state that the aggregate liability of the participating insurers is annual, limiting liability to, for example, "$30,000,000 each occurrence and in the aggregate." The signature page recites, "This policy being for $30,000,000, each of the signatories assumes for its account their indicated quota share amount of the total $30,000,000 limit of liability."

It is the majority's position that despite the provision contained in each excess policy that it reflect the terms and definitions of the underlying policy providing for an annual limit of liability, the aggregate liability limitation of such excess policy is not annual, but extends over its three-year duration. While, standing alone, an aggregate limit of $30,000,000 contained in a three-year insurance policy might logically be construed as a limit to be applied over the life of the policy, the explicit expression of the parties' intent that the excess policy mirror the terms of the underlying insurance coverage dispels any doubt that the limitation on the coverage afforded is meant to be annualized. As stated in *Commercial Union Ins. Co. v Swiss Reins. Am. Corp.* (413 F3d 121, 128 [1st Cir 2005], quoting *Aetna Cas. & Sur. Co. v Home Ins. Co.*, 882 F Supp 1328, 1337 [SD NY 1995]), " '[w]here a following form clause is found in the reinsurance contract, concurrency between the policy of reinsurance and the reinsured policy is presumed, such that a policy of reinsurance will be construed as offering the same terms, conditions and scope of coverage as exist in the reinsured

policy, i.e., in the absence of explicit language in the policy of reinsurance to the contrary.' '' The language on the signature page does not detract from this analysis, merely indicating each insurer's *partial* share of the *total* liability, without specifying whether such total is to be aggregated annually or over the duration of the policy.

The unreported case relied upon by the majority, *Maryland Cas. Co. v W.R. Grace & Co.* (1996 WL 169326, 1996 US Dist LEXIS 4500 [SD NY 1996]), is distinguishable in respect of the exception contained in the follow the form clause in the reinsurance policies, which reads: '' 'Except as otherwise provided herein the insurance afforded by this policy shall follow the terms, conditions and definitions as stated in the policies of underlying insurance, *except for limits of liability*, any renewal agreement and any obligation to investigate or defend' '' (1996 WL 169326, *3, 1996 US Dist LEXIS 4500, *9-10). The court noted that ''while the policies 'follow form' to the underlying insurance in certain respects, this does not include limits of liability, which are set forth as $5 million for 'each occurrence' and $5 million 'aggregate' '''(1996 WL 169326, *3, 1996 US Dist LEXIS 4500, *10). In view of the explicit exception, it is hardly remarkable that the court applied the aggregate limit over the multiyear duration of the excess policies rather than applying an annual limit, as provided in the underlying insurance.

The facts of the matter at bar are consonant with those of *Travelers Cas. & Sur. Co. v Ace Am. Reins. Co.* (392 F Supp 2d 659 [SD NY 2005], *affd* 201 Fed Appx 40 [2d Cir 2006]), in which the court noted that the inclusion of a follow the form clause in a three-year reinsurance certificate creates a presumption of concurrency with the terms of the underlying policy that can only be overcome ''through the placement of explicit liability limitations in the certificate itself'' (*id.* at 665). Thus, the court annualized the aggregate limit of liability, holding that because, as here, ''the certificates do not clearly or explicitly limit the coverage terms of the underlying policy, the presumption of concurrency between the excess policy and the Three-Year Certificates is not overridden'' (*id.*).

Plaintiff has submitted an expert's affidavit stating that it is industry custom that liability be aggregated annually, and that ''unless a multi-year policy clearly states otherwise, its aggregate limits are understood to apply on an annual basis.'' However, because the parties' intent to harmonize the terms of the excess policies with those of the underlying policies is apparent and unequivocal, it is unnecessary to consider extrinsic evidence (*see R/S Assoc. v New York Job Dev. Auth.*, 98 NY2d

29, 33 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 163 [1990]). Even if an ambiguity could be said to be presented and the proffered affidavit is deemed to be conclusory, "the ambiguity must be resolved against the insurer which drafted the contract" (*State of New York v Home Indem. Co.*, 66 NY2d 669, 671 [1985]).

Accordingly, the order should be affirmed to the extent it granted plaintiff's motion for partial summary judgment.