[947 NE2d 111, 922 NYS2d 220]

UNION CARBIDE CORPORATION, Appellant, v AFFILIATED FM INSURANCE COMPANY et al., Defendants, and CONTINENTAL CASUALTY COMPANY et al., Respondents.

Argued January 11, 2011; decided February 22, 2011

420

---

**POINTS OF COUNSEL**

*Proskauer Rose LLP* (*Steven R. Gilford,* of the Illinois bar, admitted pro hac vice, and *John Sloat* of counsel), *Proskauer Rose LLP,* New York City (*Bruce E. Fader* and *Matthew J. Morris* of counsel), and *Kirkland & Ellis LLP,* Chicago, Illinois (*Michael P. Foradas* of counsel), for appellant. I. The plain language of the excess policy provides for annual aggregate

products (and other) limits. (*A. Meyers & Sons Corp. v Zurich Am. Ins. Group*, 74 NY2d 298; *Travelers Cas. & Sur. Co. v Ace Am. Reins. Co.*, 392 F Supp 2d 659; *Jones v Cunard Steam Ship Co., Ltd.*, 238 App Div 172; *County of Columbia v Continental Ins. Co.*, 83 NY2d 618; *William Floyd School Dist. v Maxner*, 68 AD3d 982; *Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170; *Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363; *Metropolitan Transp. Auth. v Zurich Am. Ins. Co.*, 68 AD3d 610; *Juntunen v Sea-Con Servs., Inc.*, 879 F2d 154; *Ford Motor Co. v Northbrook Ins. Co.*, 838 F2d 829.) II. The undisputed contextual evidence further supports the plain reading of the excess policy as providing annual aggregate limits limited to specific types of claims. (*Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624; *Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363; *Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N.Y.*, 45 NY2d 551; *Rickerson v Hartford Fire Ins. Co.*, 149 NY 307; *Atwater & Co. v Panama R.R. Co.*, 246 NY 519; *Kass v Kass*, 91 NY2d 554; *Employers Commercial Union Ins. Co. of N.Y. v Firemen's Fund Ins. Co.*, 45 NY2d 608; *407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23 NY2d 275; *Eighth Ave. Coach Corp. v City of New York*, 286 NY 84; *Alvarez v Prospect Hosp.*, 68 NY2d 320.) III. The two-month extension of the excess policy did not change the definition of aggregate to apply to a 14-month period. (*County of Columbia v Continental Ins. Co.*, 83 NY2d 618; *William Floyd School Dist. v Maxner*, 68 AD3d 982; *Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178; *Cadet Mfg. Co. v American Ins. Co.*, 391 F Supp 2d 884; *Kleynshvag v GAN Ins. Co.*, 21 AD3d 999; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208; *Alvarez v Prospect Hosp.*, 68 NY2d 320.)

*Carroll, Burdick & McDonough LLP* (*G. David Godwin*, of the California bar, admitted pro hac vice, and *Laurie J. Hepler* of counsel) and *Ford Marrin Esposito Witmeyer & Gleser, L.L.P.*, New York City (*Charles A. Booth* and *Patrick J. Bernal* of counsel), for Continental Casualty Company and *Litchfield Cavo LLP* (*Edward Fogarty, Jr.*, of counsel) for Argonaut Insurance Company, respondents. I. This excess policy established its own single limit of liability "in the aggregate" and did not follow form to the underlying insurer's annualized limit. (*Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514; *Hiraldo v Allstate Ins. Co.*, 8 AD3d 230, 5 NY3d 508; *Alharb v Liberty Mut. Ins. Co.*, 199 AD2d 227; *Matter of Encompass Indem. Co. v USAA Cas. Ins. Co.*, 61 AD3d 974; *Suffolk County Water Auth. v Village of Greenport*, 21 AD3d 947; *Vigilant Ins. Co. v Bear*

*Stearns Cos., Inc.*, 10 NY3d 170; *Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363; *Metropolitan Transp. Auth. v Zurich Am. Ins. Co.*, 68 AD3d 610; *Springer v Allstate Life Ins. Co. of N.Y.*, 94 NY2d 645; *National State Bank v American Home Assur. Co.*, 492 F Supp 393.) II. There is no extra aggregate limit for the two-month extension period. (*Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178; *OneBeacon Ins. Co. v Georgia-Pacific Corp.*, 474 F3d 6; *UNR Indus., Inc. v Continential Ins. Co.*, 682 F Supp 1434; *Cadet Mfg. Co. v American Ins. Co.*, 391 F Supp 2d 884; *Board of Trustees of Univ. of Ill. v Insurance Corp. of Ireland, Ltd.*, 969 F2d 329; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208; *Alvarez v Prospect Hosp.*, 68 NY2d 320; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851.)

### OPINION OF THE COURT

SMITH, J.

This appeal calls on us to interpret an excess liability insurance policy covering asbestos claims made against Union Carbide Corporation (UCC). UCC and its insurers dispute: (1) whether the policy's aggregate limit was renewed annually or continued over the three-year life of the policy; and (2) whether a two-month extension of coverage by one of the insurers triggered a new limit. We decide the first issue in UCC's favor: The limit was renewed each year. On the second issue, however, we agree with the Appellate Division that UCC's motion for summary judgment should be denied.

### I

In the mid 1970s, UCC sought—wisely, as it turned out—to obtain as much liability insurance coverage as it reasonably could. To accomplish this, it acquired coverage in layers.

In the bottom layer, a policy issued by Appalachian Insurance Company covered UCC for the first $5 million of loss, except for a "retained" amount for which UCC was self-insured. The Appalachian policy had a three-year duration, but it is clear, and not disputed, that the limit of that policy, as it applied to the claims in issue here, was renewed annually, or "annualized." The limit is identified in the policy declarations as an "annual aggregate," and one of the conditions of the policy provides: "[T]he limit of liability . . . set forth as 'aggregate' shall be the total limit of the company's liability under this policy for ultimate net loss . . . during each consecutive twelve months of the policy period."

Losses above the $5 million were covered by successive layers of excess insurance. Our concern here is with the so-called fifth excess layer, which covered losses exceeding $70 million, up to $100 million. This $30 million of coverage was divided equally—$5 million each—among six insurers, two of which, Continental Casualty Company and Argonaut Insurance Company, are involved in this appeal.

The policy issued by the fifth-layer excess insurers was a brief "subscription form policy" prepared by UCC's insurance broker. It incorporated by reference the terms of the Appalachian policy, in what is known as a "follow-the-form" clause:

> "subject to the declarations set forth below, the Companies signatory hereon agree with the Insured named below that the Insurance afforded by this agreement shall follow all the terms, insuring agreements, definitions, conditions and exclusions of [the] underlying . . . Policy . . . issued by Appalachian Insurance Company."

The "declarations set forth below" included the following: "LIMIT OF LIABILITY: $30,000,000. each occurrence and in the aggregate excess of $70,000,000. Umbrella Liability." The fifth-layer excess policy had a policy period beginning December 1, 1973 and ending December 1, 1976.

UCC was a seller of asbestos, with the result that enormous claims were made against it for the years in question. It says that it has paid over $1.5 billion in defense costs, settlements and judgments. It asserts that Continental and Argonaut are each liable under the subscription form policy for $5 million for each year in which they provided coverage. Continental and Argonaut say that their liability for the entire period is capped at $5 million per company.

As to Continental, UCC claims an additional $5 million because the policy was extended beyond the three years. A supplement to the subscription form policy issued by Continental in December 1976 says: "In consideration of an additional premium of $1,530, it is agreed that the policy is hereby extended to read: 2/1/77 Exp. Date." According to UCC, a new $5 million policy limit became available to it by virtue of this two-month extension.

On UCC's motions for partial summary judgment, Supreme Court ruled in its favor on both issues. The Appellate Division, with one Justice dissenting, disagreed and denied UCC's

motions as to both issues (*Union Carbide Corp. v Affiliated FM Ins. Co.*, 68 AD3d 534 [2009]). The Appellate Division granted leave to appeal to us on a certified question. We now modify its order, and hold that UCC should be granted summary judgment on the annualization issue, but not on the extension issue.

## II

On the annualization issue, Continental and Argonaut argue in substance that the words of the declarations in the subscription form policy, "$30,000,000 . . . in the aggregate," can mean only that $30 million is the maximum that may be paid under the policy, and thus that the maximum share for each of the six signatories, including Continental and Argonaut, is $5 million. They stress that the follow-the-form clause, which incorporates the Appalachian policy by reference, is expressly made "subject to the declarations set forth below" and that those declarations, unlike the Appalachian policy, speak of an "aggregate," not an "annual aggregate," limit of liability. UCC argues that, under the follow-the-form clause, the conditions in the Appalachian policy are part of the subscription form policy, and that one of those conditions is that the "aggregate" limit shall be annualized. Each side cites precedent interpreting arguably similar, though not identical, language in other policies (*compare Maryland Cas. Co. v W. R. Grace & Co.*, 1996 WL 169326, 1996 US Dist LEXIS 4500 [SD NY 1996] [annualization rejected], *with Travelers Cas. & Sur. Co. v ACE Am. Reins. Co.*, 392 F Supp 2d 659 [SD NY 2005], *affd* 201 Fed Appx 40 [2d Cir 2006] [annualization accepted] and *Commercial Union Ins. Co. v Swiss Reins. Am. Corp.*, 413 F3d 121 [1st Cir 2005] [same]).

UCC has the better of the argument. While the reading Continental and Argonaut give to the word "aggregate" might be plausible in many contexts, here the follow-the-form clause should prevail. Such clauses serve the important purpose of allowing an insured, like UCC, that deals with many insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage. It is implausible that an insured with as large and complicated an insurance program as UCC would have bargained for policies that differed, as between primary and excess layers, in the time over which policy limits were spread. Under Continental's and Argonaut's reading, UCC could (and in fact did) reach the second and third years of its excess policies with the full limit of its primary coverage in place, but with its fifth-

layer excess coverage exhausted. It is unlikely that the parties intended this result.

This conclusion is reinforced by the part of the declarations in the subscription form policy that Continental and Argonaut rely on. The fifth-layer subscription form policy says that the limit of liability shall be "$30,000,000. *each occurrence* and in the aggregate" (emphasis added). If $30 million was the most that could be paid on the entire policy why, UCC asks, did the parties bother to specify a per occurrence limit in an equal amount? Continental and Argonaut offer no answer.

Though extrinsic evidence of the policy's meaning has been proffered, our analysis thus far has considered only the text of the subscription form policy, and the underlying policy that it incorporates by reference. Both sides here endorse this approach, and all of the judges who considered the case below adopted it also. This is an approach strongly favored in our precedents, which hold that, where the meaning of a writing is clear from its text, extrinsic evidence will not be considered (*e.g. Vintage, LLC v Laws Constr. Corp.*, 13 NY3d 847, 849 [2009]; *Innophos, Inc. v Rhodia, S.A.*, 10 NY3d 25, 29 [2008]; *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). Nevertheless, there inevitably will be cases in which the parties have not expressed themselves clearly in writing, and in which resort to extrinsic evidence will be necessary.

We need not decide whether this is such a case, because, even assuming that there is an ambiguity, the extrinsic evidence—all of it submitted by UCC—overwhelmingly supports UCC's position. UCC has submitted expert testimony that annualization of limits was the universal custom of the industry. It has also submitted contemporaneous evidence showing the existence of that custom, and other evidence showing that at least some participants in the transactions at issue assumed that the limits under the fifth-layer excess policy would be annualized. Continental's and Argonaut's only response is to insist that the language of the policy unambiguously forbids annualization, an assertion with which we do not agree.

## III

The question of whether the two-month extension of the Continental policy created a new "year" for policy limit purposes is a vexing one. Under Continental's view (assuming that the annualization issue is resolved as we have resolved it), UCC had a $5 million policy limit—the limit normally

applicable to a year—for the period December 1, 1975 to February 1, 1977; in other words, UCC essentially had to squeeze 14 months of losses into a 12-month limit. On UCC's view, it had the luxury of $10 million of coverage—24 months of limits—to cover 14 months of losses. Neither result seems wholly fair, but it is not clear that there is a wholly fair result that is possible under the policy's language.

A number of courts have considered similar questions and, perhaps unsurprisingly, reached divergent results (*compare Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178, 1216-1217 [2d Cir 1995], *United States Min. Prods. Co. v American Ins. Co.*, 348 NJ Super 526, 792 A2d 500 [App Div 2002], *Cadet Mfg. Co. v American Ins. Co.*, 391 F Supp 2d 884, 890 [WD Wash 2005], and *Independent Petrochemical Corp. v Aetna Cas. & Sur. Co.*, 1988 WL 877629, *52-54, 1988 US Dist LEXIS 15839, *155-159 [D DC 1988] [all ruling in favor of the insured], *with UNR Indus., Inc. v Continental Ins. Co.*, 1988 WL 121574, *2-3, 1988 US Dist LEXIS 12561, *4-9 [ND Ill 1988], *General Refractories Co. v Insurance Co. of N. Am.*, 906 A2d 610, 2006 PA Super 224 [2006], and *Uniroyal Inc. v American Re-Ins. Co.*, 2005 WL 4934215, *19-22, 2005 NJ Super Unpub LEXIS 794, *52-61 [App Div 2005] [all ruling in favor of the insurer]). The parties discuss at some length which of these cases are and are not distinguishable. Since none of them is binding on us, we do not pursue the question.

Facts peculiar to this case may shed light on the problem, but do not solve it. The record suggests that, in late 1976, Continental wanted to withdraw entirely from insuring UCC's liabilities, and was persuaded to remain on the risk for two more months as an accommodation. It may be argued that the parties would not reasonably have expected that accommodation to give UCC a fresh set of policy limits. On the other hand, extrinsic evidence submitted by UCC shows that a representative of UCC's insurance broker tried to negotiate an "extension period to be treated as a separate annual period for aggregate reckoning purposes," and that he was optimistic about succeeding. But the record does not clearly show whether he did succeed; the document that Continental actually issued says only "that the policy period is hereby extended"—it does not mention policy limits.

We conclude, as the Appellate Division majority did, that UCC has not met its burden on summary judgment of establishing coverage for an additional year's policy limits (*see Consolidated*

*Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 218 [2002]). We cannot say, based on what is before us, that UCC's proposed resolution of the extension issue is the only possible one. The issue thus remains open to be determined on another motion, or at trial.

Accordingly, the order of the Appellate Division should be modified to grant UCC's motion for summary judgment on the annualization issue, and otherwise affirmed, without costs, and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order modified, etc.