J-S75028-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| SHELLY M. BROADWATER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH E. MATERKOWSKI, | : | No. 1021 WDA 2019 |
| INDIVIDUALLY AND AS AGENT FOR | : | |
| ABACUS MANAGEMENT SYSTEMS, | : | |
| LLC; ABACUS MANAGEMENT | : | |
| SYSTEMS, LLC; DEREK VIRGILI, | : | |
| INDIVIDUALLY AND AS AGENT FOR | : | |
| BERKSHIRE HATHAWAY | : | |
| HOMESERVICES THE PREFERRED | : | |
| REALTY; AND BERKSHIRE | : | |
| HATHAWAY HOMESERVICES THE | : | |
| PREFERRED REALTY | : | |

Appeal from the Order Entered June 11, 2019,
in the Court of Common Pleas of Fayette County,
Civil Division at No(s):  1725 of 2017 GD.

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                FILED NOVEMBER 30, 2020

## I.    Introduction

In this dispute over a sale of residential property, Shelly M. Broadwater ("the Buyer") appeals an order involuntarily discontinuing her lawsuit against all four defendants.  Those defendants are (1) the company that flipped and sold her the home in question, (2) its manager,[1] (3) the Seller's real-estate

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We refer to defendants one and two (Abacus Management Systems and Joseph E. Materkowski) collectively as "the Seller."

agent, and (4) the agent's firm.[2]   During discovery, the Buyer settled her claims against the Seller for an undisclosed amount of money ("the Release"). The trial court concluded that the Release of the Seller also released the Agency, because the Agency had cross-sued the Seller for contribution and indemnification.

Relying on Pennsylvania Rule of Civil Procedure 229, which governs voluntary discontinuances, the trial court involuntarily discontinued the entire lawsuit.  This was incorrect.  The Buyer did not execute a general release, so her claims against the Agency remain viable, as do the Agency's cross-claims against the Seller.  We therefore reverse the order discontinuing this action.

## I I.    Factual & Procedural Background

The Buyer purchased a remodeled home from the Seller.  The Buyer alleges there were substantial defects that all defendants concealed prior to the closing.  She therefore brought counts for fraud, breach of contract, and violation of the Real Estate Disclosure Act[3] against Seller.  She also brought a separate count of fraud against the Agency.  Finally, the Buyer alleged a count for violation of the Unfair Trade Practices and Consumer Protection Law[4] by all defendants.

_____

[2] We refer to defendants three and four (Derek Virgili and Berkshire Hathaway) collectively as "the Agency."  Originally, the real-estate agency was Northwood Realty Service, but that defendant changed to Berkshire Hathaway while this matter was before the trial court.

[3] 68 Pa.C.S.A. § 7301.

[4] 73 Pa.C.S.A. § 201.1.

The Agency filed a cross-claim against the Seller, claiming if the Agency was ultimately liable to the Buyer, then the Seller is jointly and severally liable. In other words, the Agency sought reimbursement from the Seller for any money it might ultimately owe the Buyer.

The Seller filed no Answer to the Buyer's Complaint. Nor has it filed an Answer to the Agency's cross-claim.

After a year, the Buyer signed the Release and agreed to release the Seller:

> from any and all actions, causes of action, claims or demands, of whatever kind or nature, for any known or unknown injuries, losses, or damages allegedly sustained by [Buyer] and related in any way to the legal action instituted by the undersigned in the Court of Common Pleas of Fayette County, Pennsylvania, at Docket No. 1725 of 2017.

Buyer's 10/24/18 Release at 1. The Release made no direct reference to the Agency or the Buyer's claims against the Agency.

The Buyer then praeciped to discontinue her action against the Seller without permission from the trial court or the Agency. Four months later, the Agency asked the trial court to strike the discontinuance against the Seller, under Pa.R.C.P. 229. The court denied that request "without prejudice to re-present should the [Seller] fail to file a Motion for Leave of Court to discontinue the action" as to all defendants. 4/12/19 Order.

Next, the Seller moved to terminate the Buyer's case in its entirety, under Rule 229. The Seller argued that, because the Buyer did not obtain permission from the court or the Agency to file her praecipe to discontinue

regarding the Seller, the Buyer misled opposing counsel and the Seller into believing that they were fully and forever released and discharged from all actions or causes of action, claims, or demands in this matter.

The Buyer replied to the motion by specifically denying she "intended, or represented, that the Praecipe to . . . Discontinue ended all claims against all Defendants. On the contrary, [the praecipe] clearly indicates, on its face, that it applies to claims against the [Seller] only." Buyer's Answer and New Matter to Seller's 5/6/19 Motion at 2. She also indicated that Pa.R.C.P. 229 does not allow the trial court to dismiss a case. See id. In her New Matter, the Buyer sought the trial court's approval of her already-filed praecipe to discontinue as to the Seller, under Rule 229(b)(1). See id. at 4.

The trial court entered an order discontinuing the action completely — i.e., as to all four defendants. This timely appeal followed.

### III. Analysis

The Buyer raises two issues that we combine for ease of disposition – whether the trial court committed an error of law or abused its discretion by dismissing this case. See Buyer's Brief at 4. In the Agency's responsive brief, it argues that we should affirm the order discontinuing this case with prejudice on alternative grounds. See Agency's Brief at 3-9. We address both parties' issues in turn.

### A. Discontinuance under Rule 229

With only two pages of argument, the Buyer's brief is quite succinct. See id. at 7-8. She argues that Rule 229 does not authorize the trial court to

- 4 -

discontinue a case against all defendants as penalty for failure to obtain leave of court. She also contends her noncompliance with the Rule, if any, did not prejudice the defendants. Thus, the Buyer believes the trial court misapplied Rule 229 and thereby abused its discretion in discontinuing this case.

The Seller's response expresses frustration with what Seller perceives to be the Buyer's anticipatory repudiation (if not outright breach) of the Release. The Seller claims the Buyer and her counsel "are acting in bad-faith," and it should receive "attorney fees and costs per the full-and-final disclosure, which assures that [the Buyer] will reimburse for all losses or damages . . . sustained related in any way to legal action instituted by the [Buyer]." Seller's Brief at 4 (some punctuation and capitation omitted). According to the Seller, "The trial court must be upheld and [the Buyer] and her counsel's bad faith cannot be permitted under any circumstances as this conduct is unconscionable in this Commonwealth." Id. at 6. The Seller contends that the Buyer promised "full indemnification in exchange for the settlement payment." Id. at 9 (emphasis in original). In the Seller's view, the Buyer's procedural error "clearly prejudiced" it, because the Seller fears exposure to liability from the Agency's cross-claim "that [the Seller is] responsible for any and all wrongdoing." Id. (emphasis in original).[5]

---

[5] Also, Seller claims "that five contractors were paid $30,000.00 for the work done in the home" and that the decision to settle involved Ms. Broadwater's alleged need to join those contractors as co-defendants. See Seller's Brief at 5-6, 13. Whatever may have transpired during settlement negotiations or

Initially, we observe that the Seller erroneously states our standard of review. It asserts "the trial court has absolute discretion over the application of discontinuances pursuant to Rule 229." Seller's Brief at 3 (citing Becker v. M.S. Reilly, Inc., 123 A.3d 776 (Pa. Super. 2015)). Were we to afford trial court's absolute discretion to discontinue a plaintiff's case, we would abdicate our duty of appellate review. Instead, the Becker Court said, "The causes which will move the [trial] court to withdraw its assumed leave and set aside the discontinuance are addressed to its discretion . . . ." Becker, 123 A.3d at 779. Thus, our "standard of review of a trial court's order granting a request for discontinuance is [an] abuse of discretion." Truesdale ex rel. Truesdale v. Albert Einstein Med. Ctr., 767 A.2d 1060, 1063 (Pa. Super. 2001), as revised (Mar. 30, 2001).

"An abuse of discretion occurs when the trial judge misapplies the law, or exercises his or her judgment in a manner that is manifestly unreasonable, or the result of bias, prejudice, or ill will." Id. (some punctuation omitted). In other words, we defer to a trial court's decision to discontinue a party or parties, if (1) the ruling is reasonable and (2) it is based upon a correct interpretation of the rules of civil procedure.

_____

may have appeared in discovery are absent from the record. Thus, these supposed facts are beyond our scope of review. Generally, if it is not in the record, it does not exist. See, e.g., Stumpf v. Nye, 950 A.2d 1032, 1041 (Pa. Super. 2008).

"To the extent that the question presented involves interpretation of rules of civil procedure, our standard of review is de novo." Brown v. Quest Diagnostics, 209 A.3d 386, 389 (Pa. Super. 2019). We owe the trial court's interpretation of Rule 229 no deference whatsoever.

When interpreting the rules of civil procedure our goal "is to ascertain and effectuate the intention of the Supreme Court." Pa.R.C.P. 217(a). If "the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. We must also strive to give effect to all of the words within a rule, if possible. See id.

Mindful of these directives, we turn to Rule 229, which provides, in relevant part:

> (a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial.
>
> (b)(1) Except as otherwise provided in subdivision (b)(2), a discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance . . .
>
> (c) The court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice.

Pa.R.C.P. 229.

Under the plain language of the Rule, the Buyer is correct. There is no penalty for violating Pa.R.C.P. 229, and it especially does not authorize the

imposition of summary judgment as to all defendants, which was the practical result of the trial court's order. The Rule is not a proper basis for involuntary termination (a.k.a., "summary judgment"), because Pa.R.A.P. 229 is "the exclusive method of voluntary termination of an action . . . ." Id. (emphasis added).

The trial court acknowledged that "the Rule does not state a clear remedy when a party fails to comply with that Rule." Trial Court Opinion, 9/16/19, at 6. The court then said that there "does not appear to be any case law directly on point with this issue." Id. As we explain below, some precedent exists, but none of it supports the trial court's order.

Paragraph (b)(1) of the Rule specifically deals with cases such as this, where a plaintiff attempts to discontinue her action against less than all of the defendants in her lawsuit. That paragraph's language unambiguously supports the trial court and the Seller's view that the Buyer needed to obtain "the written consent of all parties or leave of court . . . ." prior to praeciping to her discontinue as to only the Seller. Pa.R.C.P. 229(b)(1).

However, in construing Rule 229, the Supreme Court of Pennsylvania has held that seeking leave of court before filing the praecipe is a technical formality, observed more often in the breach than in the keeping. The trial court presumptively grants its leave, as a matter of ancient practice, predating the rules of civil procedure. Rule 229(b)(1) "reflects the longstanding practice in Pennsylvania, which was well-described in Consolidated National Bank v. McManus, 217 Pa. 190, 66 A. 250 (1907). In McManus, the plaintiff

entered a discontinuance, the defendant filed a rule to show cause why it should not be stricken, and the [trial] court discharged the rule." Fancsali ex rel. Fancsali v. Univ. Health Center of Pittsburgh, 761 A.2d 1159, 1161 (Pa. 2000).

The McManus Court deemed the discharging of the rule to show cause as the "equivalent to a grant of leave" to discontinue, even though the plaintiff never moved for such leave. McManus, 66 A. at 250. The Court explained that:

> A discontinuance in strict law must be by leave of court, but it is the universal practice in Pennsylvania to assume such leave in the first instance . . . All the cases show that a discontinuance must be founded on the express or implied leave of the court. In England, this leave is obtained on motion in the first instance, [but, in American practice,] it is taken without the formality of an application, but subject to be withdrawn on cause shown . . . that is the whole difference.

Id. at 250.

The Supreme Court of Pennsylvania promulgated Pa.R.C.P. 229(b)(1) in light of McManus (as reaffirmed in Fancsali). The statement that a plaintiff "may not" enter a discontinuance without the consent of all parties or leave of court, then, is mandatory, but the Buyer's violation of the Rule does not warrant the discontinuance of her action. In the American practice, the Buyer could presume that she had the leave of the court to file her praecipe without actually requesting it, if she were discontinuing the action as to all defendants. But that presumption does not apply to a discontinuance of only some

defendants. Where, as here, a plaintiff files a discontinuance as to only some defendants without express leave of court, the Rule allows her to do so without penalty. However, the remaining defendants may then move for the striking of the discontinuance, as the Agency did here. The burden of convincing the trial court to strike the discontinuance, then falls upon any remaining parties under 229(c). See also, Becker, 123 A.3d at 779 (framing the issue as whether the trial court should "withdraw its assumed leave and set aside the discontinuance") (emphasis added).

Here, the Agency attempted to do just that, but the trial court denied it relief. Instead, the court essentially reinstated English procedure. By faulting the Buyer for not obtaining the court's leave before filing the praecipe to discontinue, the trial court required that "leave [be] obtained on motion in the first instance." McManus, 66 A. at 250. This was error; the trial court should have limited its inquiry to the single issue the Agency raised — i.e., whether the Buyer could discontinue as to the Seller without prejudicing the Agency. If the discontinuance of the Seller prejudiced the Agency, the proper remedy was not the discontinuance of the whole matter. Instead, the trial court should have stricken the discontinuance as to the Seller and allowed the case to proceed to trial against all four defendants.

Under McManus, Fancsali, Becker, and Pa.R.C.P. 229(b)(1), the Buyer needed leave of court to discontinue the Seller. However, the trial court also erred as a matter of law when it manufactured a summary-judgment-like penalty for the Buyer's Rule 229 violation and discontinued the case. There

is nothing in Rule 229 that calls for such a draconian result. Accordingly, we agree with the Buyer; the trial court committed an error of law by misapplying Rule 229.

The court therefore abused its discretion when it discontinued this case as to all parties.

B.     The Release and UCATA

Our review cannot end here, however, because the Agency asks us to affirm the dismissal of the Buyer's suit on alternative grounds. This Court is "not bound by the rationale of the trial court and may affirm on any basis." Sw. Energy Prod. Co. v. Forest Res., LLC, 83 A.3d 177, 184 (Pa. Super. 2013) (quotations and citations omitted).

The Agency claims that the trial court properly interpreted and enforced the Release, which was the true basis for the trial court's decision, not Rule 229. In essence, the Agency asserts the Buyer signed a general release. It believes the Uniform Contribution Among Tortfeasors Act ("UCATA")[6] bars the Buyer from any additional recovery.

This issue requires us to interpret the UCATA statute and the Release. "Because this claim raises an issue of statutory construction, which is a question of law, this Court's standard of review is de novo, and the scope of review is plenary." Cash Am. Net of Nevada, LLC v. Com., Dep't of Banking, 8 A.3d 282, 289 (Pa. 2010). We use the same scope and standard

_____

[6] 42 Pa.C.S.A. §§ 8321 – 8327.

of review to interpret the Release, because the "interpretation of a contract is [also] a question of law." Gen. Refractories Co. v. Ins. Co. of N. Am., 906 A.2d 610, 612 (Pa. Super. 2006).

When interpreting a statute our goal "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have a "peculiar and appropriate meaning" are construed according to that meaning. 1 Pa.C.S.A. § 1903(a).

Critically, statutes relating to the same subjects are in pari materia, and they "shall be construed together, if possible, as one statute." 1 Pa.C.S.A. § 1932. UCATA's seven sections, 42 Pa.C.S.A. §§ 8321 – 8327, relate to the same subject – i.e., damages apportionment among joint tortfeasors, especially after a plaintiff has released less than all joint tortfeasors. Thus, we hold that UCATA's provisions are in pari materia and must be read and construed together as one statute.

As for the Release, "it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001). In other words, we read and apply a release's language like any other contract.

By way of background, the legislature enacted UCATA to supplant the common law. "UCATA abrogated the broader, common-law rule that payment by one tortfeasor would release all others regardless of the parties' intent, insofar as it applied to joint tortfeasors." Maloney v. Valley Med. Facilities, Inc., 984 A.2d 478, 481 n.4 (Pa. 2009). UCATA "drastically changed the law on this subject, and, since its enactment, a release by the injured party to one jointly liable does not release others also liable, unless the release expressly so provides." Brown v. City of Pittsburgh, 186 A.2d 399, 402 (Pa. 1962).

The statute therefore allows a plaintiff to execute a "general release." General releases surrender the plaintiff's right to sue, not only whichever defendants' names appear in the release, but also the rest of the world. For example, in Buttermore v. Aliquippa Hospital, 561 A.2d 733 (Pa. 1989), the plaintiff was severally injured in a car accident and the hospital treated his injuries. According to Mr. and Mrs. Buttermore, medical malpractice had worsened his injuries and caused irreversible, nerve damage to his spine. They sued the hospital and its doctors, who moved for judgment as a matter of law, based on a release Mr. Buttermore had previously executed with the driver who caused the underlying accident. That release's all-encompassing language was as follows:

> I . . . hereby remise, release, acquit, and forever discharge [negligent driver] et al. . . . and any and all other persons . . . or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims, demands, damages, actions, third-party actions, causes of action, or suits at law or in equity, indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered

- 13 -

to be done, on account of or arising from damage to property, bodily injury, or death resulting or to result from an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania for which I/We have claimed the said [negligent driver] et al. to be legally liable . . . .

Buttermore, 561 A.2d 733, 734 (quoting release).

The trial court granted summary judgment to the hospital and doctors based upon the general release. This Court reversed, and the Supreme Court of Pennsylvania granted review and reinstated summary judgment as to Mr. Buttermore's personal-injury claims.[7] Citing the universality of the release's language, the Supreme Court explained that "a release given to a particular individual and 'any and all other persons whether herein named or not' [applies] to all tortfeasors, despite the fact that they were not specifically named." Id. at 735.

Litigants are therefore free to fashion settlement agreements however they wish. If parties require that "the matter must end then and forever . . . they are at liberty to do so. They may agree . . . that they will not sue each other or any one [else] for the event in question. However, improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident, or mutual mistake, is the law of their case." Id. Thus, one tortfeasor may demand that, as a condition for settlement, that a plaintiff forfeit all claims against other tortfeasors.

---

[7] The Supreme Court affirmed this Court as to Mrs. Buttermore's claim for loss of consortium, because she had not signed the release. Her cause of action, while procedurally linked to her husband's claim, stood alone.

The Release at bar, however, does not contain the universal language found in Buttermore. Unlike the Buttermore release, the Buyer's Release contains no "et al." and no "and any and all other persons . . . or corporations, whether known or unknown" clauses. Additionally, this Release makes no mention of the Agency and no mention of the two counts that the Buyer has alleged against the Agency. Instead, it releases only the Seller:

> The [Buyer] hereby fully and forever releases, acquits, and discharges JOSEPH E. MATERKOWSKI and ABACUS MANAGEMENT SYSTEMS, LLC from any and all actions, causes of action, claims or demands, of whatever kind or nature, for any known or unknown injuries, losses, or damages allegedly sustained by the [Buyer] and related in any way to the legal action instituted by the undersigned in the Court of Common Pleas of Fayette County, Pennsylvania, at Docket No. 1725 of 2017.

Buyer's 10/24/2018 Release at 1 (emphasis added). Thus, the Release was solely and exclusively as to the Buyer's claims against the Seller.

Because the Release does not provide for the discharge of the Agency (or anyone else other than the Seller), the Agency's reliance upon the Release to exit this lawsuit is misplaced. Indeed, were we to apply the Release as the Agency suggests and end this case, we would override UCATA and return to the common law, when payment from one of many tortfeasors to a plaintiff terminated the remainder of the case.

Still, the Agency argues that such a result would be unjust, because it has cross-claims for contribution and indemnification pending against the Seller, whom the Buyer has now fully and finally released from liability in this

action. The Agency believes that, in order for the Buyer to preserve her claims

against it, she needed to include language in the Release so stating.

This was also the primary concern for the trial court, which opined:

> The [Agency] filed a cross-claim against the [Seller], asserting that the [Seller was] responsible for any and all wrongdoing, or that [it was] jointly liable.
>
> The [Buyer] and the [Seller] then entered into the . . . Release, which released the [Seller] from the case in its entirety. The [Seller] paid consideration to the [Buyer] as a settlement. The [Buyer] then filed its Discontinuance as to the [Seller] only, without seeking leave of court or consent of the [Agency].
>
> Legally, however, a discontinuance between a plaintiff and defendants does not preclude cross-claims between defendants and additional defendants. See Ross v. Tomlin, 969 A.2d 230 (Pa. Super. 1997). This means that the [Agency's] continued presence in the action would also continue [its] cross-claim against the [Seller]. As a result, the [Seller] could still be liable for damages to the [Buyer] if the [Agency] and the [Buyer] went to trial, even though the [Seller] settled [its] case with the [Buyer, who] released the [Seller] from the action.
>
> In deciding whether to grant the [Seller's] Motion for Leave of Court to Discontinue as to All Parties, this Court determined that discontinuing against all defendants was the only option consistent with the apparent intention of the . . . Release between the [Buyer] and the [Seller]. Further, by not discontinuing the [Agency], [its] cross-claim against the [Seller] would have continued to be valid, which would have greatly prejudiced the [Seller].

Trial Court Opinion, 9/16/19, at 7-8.

The trial court's reasoning ignores UCATA and impermissibly converts

the Buyer's specific release of only the Seller into a general release of the

whole world. As explained above, under Buttermore, supra, the Buyer did

not execute a general release. Thus, the trial court's discontinuance as to the Agency directly contradicted the General Assembly's directives in UCATA that a "release by the injured person of one joint tortfeasor . . . does not discharge the other tortfeasors, unless the release so provides." 42 Pa.C.S.A. § 8326 (emphasis added) (some punctuation omitted).

Indeed, under the plain language of UCATA, the Seller remains liable to the Agency for contribution and indemnification, notwithstanding the Release of the Seller by the Buyer. The UCATA "does not impair any right of indemnity under existing law." 42 Pa.C.S.A. § 8323. "The right of contribution exists among joint tortfeasors." 42 Pa.C.S.A. § 8324(a) (some punctuation omitted). Finally, a "release by the injured person of one joint tortfeasor does <u>not</u> relieve him [i.e., the released tortfeasor] from liability to make contribution to another tortfeasor . . . ." 42 Pa.C.S.A. § 8327 (some punctuation omitted) (emphasis added). The only exception to that provision is if "the release [(1)] is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and [(2)] provides for a reduction to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors." Id. (emphasis added).

Currently, the Release only satisfies the first part of the exception, as Buyer gave it before the Agency's right to secure its judgment for contribution from the Seller has accrued. As for the second part, the Release does not provide for a pro rata reduction of the Seller's share from any judgment that

- 17 -

the Buyer might, in the end, recover from the Agency. Hence, the exception to Section 8327 of UCATA does not apply, and we may not hold that this Release automatically relieves the Seller "from liability to make contribution to [the Agency]" under UCATA. Id.

By concluding the Release automatically canceled the Agency's cross-claim for contribution and indemnity against the Seller, the trial court failed to apply the plain language of 42 Pa.C.S.A. §§ 8323, 8324(a), 8327. Total discontinuation of this case relieved a released tortfeasor (Seller) from contribution to its potential, joint tortfeasor (the Agency), based solely upon the fact that the Buyer had entered a release with the Seller. Automatic discontinuance of the whole action was error as a matter of law.

## IV. Conclusion

In sum, because the trial court misapplied Pennsylvania Rule of Civil Procedure 229, its effective grant of summary judgment under Rule 229 must be reversed. The pro tanto Release that Seller executed with Buyer does not permit the Seller to exit this lawsuit, because a pro tanto Release does not settle or discontinue Seller's potential liability to the Agency on the cross-claims for indemnification and contribution.

Order reversed. Case remanded for further proceedings.

Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge Pellegrini concurs in the result.

- 18 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/30/2020</u>