■ St. John's University, New York, Appellant, v Butler Rogers Baskett Architects, P.C., et al., Defendants, and Skanska USA Building, Inc., Defendant/Third-Party Plaintiff-Respondent. Phase I Group, Inc., Third-Party Defendant-Respondent. (And Another Third-Party Action.) [938 NYS2d 578]—

On two occasions in July 2006, and again in June, July, and August 2007, severe rainstorms swept the Jamaica, Queens, campus of St. John's University (hereinafter the plaintiff), resulting in flooding of two of its buildings, the Taffner Field House and Carnesecca Hall, and millions of dollars in property damage. The plaintiff filed a claim with its insurer, Lloyd's of London (hereinafter Lloyd's) under two institutional casualty insurance policies (hereinafter the IPI policies) that covered losses to the plaintiff's property worldwide occurring between July 1, 2006, and July 1, 2008. Lloyd's paid the plaintiff the sum of $2.7 million under the IPI policies.

The plaintiff commenced the instant action against Skanska

USA Building, Inc. (hereinafter Skanska), which had contracted with the plaintiff to manage the construction of the Taffner Field House, alleging that Skanska, inter alia, had breached the contractual duty it owed to the plaintiff, and was otherwise negligent in failing to ensure that the Taffner Field House was free from defects, and that these breaches of contractual and common-law duty caused the flooding at and in the vicinity of that building. The plaintiff sought to recover for the damage caused by the flooding to both the Taffner Field House and Carnesecca Hall and, thus, in effect, sought to recover, on behalf of Lloyd's, the insurance proceeds paid by Lloyd's to the plaintiff under the IPI policies. Skanska joined issue, asserting that, to the extent that the causes of action sought to recover for damages to the Taffner Field House that had already been paid to the plaintiff by Lloyd's, those causes of action were barred by the antisubrogation rule (the third affirmative defense), and that the plaintiff had waived the right of subrogation under its contract with Skanska (the fourth affirmative defense). Skanska commenced a third-party action against Phase I Group, Inc. (hereinafter Phase I), seeking, inter alia, contractual indemnification, since Phase I installed the drainage system pursuant to a subcontract with Skanska.

Skanska and Phase I moved for summary judgment dismissing the causes of action that sought to recover for damage to the Teffner Field House and Carnesecca Hall, to the extent that Lloyd's had already paid the plaintiff for that damage, and the plaintiff cross-moved for summary judgment, inter alia, dismissing Skanska's third and fourth affirmative defenses. The Supreme Court granted those branches of the motions of Skanska and Phase I which were for summary judgment dismissing the causes of action that sought to recover for damage to the Taffner Field House, to the extent that Lloyd's had already paid for that damage. The Supreme Court held that, pursuant to a waiver of subrogation provision in the contract between the plaintiff and Skanska, the plaintiff had waived its right to seek recovery on behalf of Lloyd's for the damage to the Taffner Field House. However, the Supreme Court concluded that an issue of fact existed as to whether the scope of the waiver included the damage to Carnesecca Hall. The Supreme Court, inter alia, denied those branches of the plaintiff's cross motion which were for summary judgment dismissing Skanska's third and fourth affirmative defenses.

Subrogation, an equitable doctrine, entitles an insurer to stand in the shoes of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the

insurer is bound to reimburse (*see North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993]). The subrogation doctrine allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage (*id.*). However, an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered (*see Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 468 [1986]).

Here, the plaintiff satisfied its prima facie burden of establishing its entitlement to judgment as a matter of law dismissing Skanska's third affirmative defense, which alleged that the antisubrogation rule barred certain of the plaintiff's claims, by demonstrating that Skanska was not an additional insured under the IPI policies (*see Glens Falls Ins. Co. v City of New York*, 293 AD2d 568, 570 [2002]) and that consequently, the plaintiff, by prosecuting the action, in effect, on behalf of Lloyd's, was not making a claim against one of Lloyd's insureds. In opposition, Skanska failed to raise a triable issue of fact. Skanska contends that under its contract with the plaintiff, the plaintiff was required to name it as an additional insured. However, those provisions of the contract refer to a builder's risk endorsement. By August 26, 2005, Skanska had provided the plaintiff with a certificate of substantial completion, and the New York City Department of Buildings had issued a temporary certificate of occupancy for the Taffner Field House, at which point the plaintiff canceled the builder's risk endorsement. Thus, the builder's risk endorsement was no longer in effect when the flooding occurred, and the plaintiff's claim was paid pursuant to the IPI policies, not the builder's risk endorsement, which insures against different risks. Therefore, the plaintiff, in effect, on behalf of Lloyd's, is not seeking subrogation against its own insured for a claim arising from the very risk for which the insured was covered (*see Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d at 468; *Utica Mut. Ins. Co. v Brooklyn Navy Yard Dev. Corp.*, 52 AD3d 821, 822-823 [2008]; *Insurance Corp. of N.Y. v Cohoes Realty Assoc., L.P.*, 50 AD3d 1228, 1230 [2008]; *Glens Falls Ins. Co. v City of New York*, 293 AD2d at 570). Accordingly, the plaintiff is entitled to summary judgment dismissing Skanska's third affirmative defense.

The interpretation of a contract should give fair meaning to all of the language employed by the parties, and reach a practical interpretation of the parties' expressions so that their reasonable expectations will be realized (*see W.W.W. Assoc. v Gian-*

*contieri*, 77 NY2d 157, 162 [1990]; *McCabe v Witteveen*, 34 AD3d 652, 654 [2006]). Contract language which is clear and unambiguous must be enforced according to its terms (*see McCabe v Witteveen*, 34 AD3d at 654). Thus, while parties to an agreement may waive their insurer's right of subrogation, a waiver-of-subrogation clause cannot be enforced beyond the scope of the specific context in which it appears (*see Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997]).

Section 11.4.5 of the contract between the plaintiff and Skanska provides, "If during the Project construction period the Owner [the plaintiff] insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss to the extent that said damage or loss is covered by this separate property insurance. All separate policies shall to the extent obtainable, without additional premium, provide this waiver of subrogation by endorsement or otherwise." Section 11.4.7 of the contract provides, "The Owner [the plaintiff] and Contractor [Skanska] waive all rights against (1) each other . . . for damages caused by fire or other causes of loss to the extent of actual recovery of any insurance proceeds under any property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work."

Contrary to the plaintiff's contention, although the IPI polices were obtained after construction on the Taffner Field House was completed, they constitute "property insurance applicable to the [w]ork." The "[w]ork" is defined in the contract as, inter alia, the "completed [p]roject," which is the Taffner Field House (*see Acuity v Interstate Constr., Inc.*, 2008 Ohio 1022, ¶ 63 [2008]; *TX C.C., Inc. v Wilson/Barnes Gen. Contrs., Inc.*, 233 SW3d 562, 570 [Tex 2007]). However, as the plaintiff correctly contends, the first clause of section 11.4.5, pertaining to the "[p]roject construction period," does not apply to the instant dispute because construction had been completed by the time of the flooding in 2006 and 2007. The IPI policies, which were in effect from July 1, 2006, until July 1, 2008, were not insuring the property during the "[p]roject construction period." Thus, that portion of section 11.4.5 does not bar the plaintiff, in effect, on behalf of Lloyd's, from seeking damages from Skanska.

As for the portion of section 11.4.5 pertaining to the period

"after final payment," contrary to the plaintiff's contention, a plain reading of it, supported by the Commentary of the American Institute of Architects, demonstrates that the waiver applies to post-construction losses (see *Argonaut Great Cent. Ins. Co. v DiTocco Konstruction, Inc.*, 2007 WL 4554219, \*7-9, 2007 US Dist LEXIS 93846, \*26-27 [D NJ 2007]; *Royal Surplus Lines Ins. Co. v Weis Bldrs., Inc.*, 2006 WL 897078, \*4, 2006 US Dist LEXIS 16316, \*13 [WD Ky 2006]; *Middleoak Ins. Co. v Tri-State Sprinkler Corp.*, 77 Mass App Ct 336, 338, 931 NE2d 470, 471-472 [2010]). Further, there is no merit to the plaintiff's contention that the inclusion of the phrase "is to be provided" limited the waiver of subrogation to situations in which the plaintiff was contractually obligated to purchase casualty insurance after construction was completed (see *Argonaut Great Cent. Ins. Co. v DiTocco Konstruction, Inc.*, 2007 WL 4554219, 2007 US Dist LEXIS 93846 [2007]; *Middleoak Ins. Co. v Tri-State Sprinkler Corp.*, 77 Mass App Ct at 339, 931 NE2d 470 at 472 [2010]; *Acuity v Interstate Constr., Inc.*, 2008 Ohio 1022, ¶ 61-62 [2008]).

As the plaintiff correctly contends, the waiver of subrogation was conditioned on such a waiver being "obtainable, without additional premium." Nevertheless, the plaintiff's submissions failed to demonstrate, as a matter of law, that the waiver of subrogation was not obtainable without additional premium. Accordingly, the existence of factual issues precludes the award of summary judgment to any party on the issue of whether the waiver of subrogation in sections 11.4.5 and 11.4.7 are applicable and, as such, the Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment dismissing the fourth affirmative defense asserted by Skanska.

The plaintiff's contention that Skanska agreed to forego enforcement of the waiver of subrogation is without merit, as that alleged agreement applied to the builder's risk endorsement and not the IPI policies. Mastro, A.P.J., Balkin, Chambers and Lott, JJ., concur.