In 1964, the decedent, John Quadrozzi, Sr. (hereinafter John Sr.), and his brother, William Quadrozzi (hereinafter William), started a concrete and cement supply business, Quadrozzi Concrete Corporation (hereinafter QCC). They subsequently established additional corporations, known as Quadrozzi Equipment Leasing Corp., Quadrozzi Enterprise Corp., Quadrozzi, Inc., doing business as NYCEMCO, Quadrozzi Realty, Inc., Beach Channel Drive Lane Ent., Inc., and Amstel Recycling, Inc. (hereinafter collectively the original Quadrozzi companies).
In 1981, William retired and the youngest brother of John Sr. and William, the plaintiff, Patrick Quadrozzi (hereinafter Patrick), who had worked in the family business since 1968, as *689 sumed William’s responsibilities handling the day-to-day operations. Patrick was given the shares in QCC owned by William and the original Quadrozzi companies.
Subsequently, in 1990, John Sr. purchased the assets of Certified Concrete Company and Transit Mix Concrete Corp., both of which were in bankruptcy. Those assets would eventually be held by newly formed corporations known as Quad Acquisition Corp., Maspeth Concrete Loading Corp., Harlem Concrete Loading Corp., Manhattan West Concrete Loading Corp., Edgewater Concrete Loading Corp., Red Hook Concrete Loading Corp., and Maspeth Truck Depot Corp. (hereinafter collectively the Certified Acquisition Companies). To facilitate this purchase, John Sr. obtained a loan from North Fork Bank for a portion of the purchase price by mortgaging the assets of QCC and some of the other original Quadrozzi companies. Further, both John Sr. and Patrick personally guaranteed the loan. The remainder of the purchase price was paid by the forgiveness of a debt owed to one of the original Quadrozzi companies. Despite this, John Sr. was the only person listed as a shareholder of the Certified Acquisition Companies.
Thereafter, in 1997, John Sr. purchased a grain terminal site, which was located on the Brooklyn waterfront, and was then organized as the defendant Gowanus Industrial Park, Inc. (hereinafter Gowanus). Patrick maintained that a portion of the purchase price was funded by money from QCC and some of the other original Quadrozzi companies. As with the Certified Acquisition Companies, John Sr. was listed as the sole shareholder of Gowanus.
In 2003, John Sr. became very ill and his wife, the defendant Theresa Quadrozzi (hereinafter Theresa), initiated a guardianship proceeding. In her petition, she claimed that John Sr. was the sole owner of the Certified Acquisition Companies and Gowanus. John Sr. died on March 28, 2004.
In November 2005, Patrick commenced this action against the estate of John Sr. and numerous corporations. Among other things, Patrick sought the issuance of shares representing his 25% ownership interest in the Certified Acquisition Companies and Gowanus, damages for corporate waste, damages for breach of fiduciary duty, the imposition of a constructive trust, and an accounting. Patrick alleged that, despite the fact that the record ownership of the Certified Acquisition Companies and Gowanus was vested solely in John Sr., John Sr. made implied promises that Patrick owned 25% of those entities. In support of his claim, Patrick pointed to the fact that he personally guaranteed a $5,000,000 loan in connection with the purchase of the Certified *690 Acquisition Companies, and that the assets of some of the original Quadrozzi companies were mortgaged as part of the financing. With respect to the acquisition of Gowanus, Patrick noted that John Sr. paid for this purchase in part by obtaining $1,350,000 in distributions from QCC and other original Quadrozzi companies in addition to mortgaging real property owned by QCC and those original Quadrozzi companies.
The defendants contended, inter alia, that Patrick never had a major managing role in any of the subject companies, that he had received proportionate distributions from the corporations in which he did have an interest at the time when John Sr. received distributions, and that the money John Sr. received to purchase the subject companies from QCC or the original Quadrozzi companies became John Sr.’s money when it was deposited into his personal account. The defendants also claimed that Patrick was aware, at the time of the purchases of the Certified Acquisition Companies and Gowanus, that the stock was to be owned solely by John Sr. Further, they maintained that Patrick’s claims were time-barred.
Upon conducting a nonjury trial, the Supreme Court found in favor of Patrick. The defendants appeal, and we affirm.
The equitable claim for the imposition of a constructive trust is governed by a six-year statute of limitations, which begins to run upon the occurrence of the wrongful act from which a duty of restitution arises (see CPLR 213 [1]; Bodden v Kean, 86 AD3d 524, 525 [2011]; DeLaurentis v DeLaurentis, 47 AD3d 750, 751 [2008]). “A determination of when the wrongful act triggering the running of the Statute of Limitations occurs depends upon whether the constructive trustee acquired the property wrongfully, in which case the property would be held adversely from the date of acquisition, or whether the constructive trustee wrongfully withholds property acquired lawfully from the beneficiary, in which case the property would be held adversely from the date the trustee breaches or repudiates the agreement to transfer the property” (Mari Piping v Maric, 271 AD2d 507, 508 [2000] [internal quotation marks and citations omitted]; see DeLaurentis v DeLaurentis, 47 AD3d at 751-752).
Here, the Supreme Court properly determined that the applicable limitations period did not bar Patrick’s cause of action seeking the imposition of a constructive trust in his favor to the extent of awarding him a 25% ownership interest in the Certified Acquisition Companies. The six-year statute of limitations applicable to this cause of action did not begin to run until 2003, when Theresa, in the context of the guardianship proceeding she commenced on behalf of John Sr., repudiated Patrick’s *691 purported acquisition of a 25% ownership interest in the Certified Acquisition Companies from John Sr. by alleging, in her guardianship petition, that John Sr. owned 100% of the Certified Acquisition Companies (see CPLR 213 [1]; Bodden v Kean, 86 AD3d at 525; Sitkowski v Petzing, 175 AD2d 801, 802 [1991]).
Further, we agree with the Supreme Court that Patrick’s cause of action seeking the imposition of a constructive trust with respect to Gowanus also is not time-barred. Here, the defendants are estopped from raising the statute of limitations defense since a fiduciary relationship existed between Patrick and John Sr., who concealed from Patrick the fact that Patrick did not have a recorded 25% ownership interest in Gowanus, a fact which John Sr. was duty bound to disclose (see Zumpano v Quinn, 6 NY3d 666, 675 [2006]; Gonik v Israel Discount Bank of N.Y., 80 AD3d 437, 438 [2011]; Gleason v Spota, 194 AD2d 764, 765 [1993]). Moreover, Patrick acted with due diligence in commencing this action after discovering that he purportedly had no ownership interest in Gowanus (see Simcuski v Saeli, 44 NY2d 442, 450-451 [1978]; cf. Julian v Carroll, 270 AD2d 457, 457 [2000]).
“A constructive trust is an equitable remedy, and may be imposed [w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest” (Rowe v Kingston, 94 AD3d 852, 853 [2012] [internal quotation marks and citation omitted]; see LMT Capital Mgt., LLC v Gerardi, 97 AD3d 546, 546 [2012]). The elements of a cause of action to impose a constructive trust are (1) the existence of a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment (see Sharp v Kosmalski, 40 NY2d 119, 121 [1976]; Rowe v Kingston, 94 AD3d at 853; Poupis v Brown, 90 AD3d 881, 882 [2011]). “However, as these elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established” (Rowe v Kingston, 94 AD3d at 853; see Simonds v Simonds, 45 NY2d 233, 243 [1978]).
“In reviewing a determination made after a nonjury trial, this Court’s power is as broad as that of the trial court, and it may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses” (BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884 [2011]; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; Havel v Goldman, 95 AD3d 1174, 1175 [2012]). Here, the Supreme Court properly *692 concluded that Patrick satisfied the elements for the imposition of a constructive trust in his favor with respect to a 25% ownership interest in the Certified Acquisition Companies and Gowanus. As relatives sharing a business relationship over several decades, Patrick and John Sr. shared a confidential relationship (see Henderson v Thorpe, 73 AD3d 978, 979 [2010]; Matter of Arnold, 173 AD2d 699 [1991]). Moreover, the Supreme Court’s finding that John Sr. made implied promises to Patrick that the Certified Acquisition Companies and Gowanus were being acquired on behalf of both of them in accordance with their history of joint ownership of QCC and the original Quadrozzi companies was warranted by the facts (see Sinclair v Purdy, 235 NY 245, 254 [1923]; Henderson v Thorpe, 73 AD3d at 979; Watson v Pascal, 65 AD3d 1333, 1334 [2009]; Neuhauser v Polanco, 14 AD3d 674, 675 [2005]; Djamoos v Djamoos, 153 AD2d 871, 872 [1989]). In reliance on those implied promises, Patrick, among other things, personally guaranteed a $5,000,000 loan to purchase the Certified Acquisition Companies, allowed the debt owed to one of the original Quadrozzi companies to be used as a credit towards the purchase price of the Certified Acquisition Companies, agreed to mortgage the real property owned by another corporation in which he had an ownership interest in order to secure cash for the purchase of Gowanus, and allowed funds from QCC and another one of the original Quadrozzi companies to pay off the mortgage on Gowanus so that he could acquire Gowanus free of any encumbrances. As a result, the defendants, as John Sr.’s heirs, would be unjustly enriched if permitted to remain in possession of 100% of the shares of the Certified Acquisition Companies and Gowanus as part of John Sr.’s estate (see Lipton v Donnenfeld, 5 AD3d 356, 358 [2004]; Matter of Wieczorek, 186 AD2d 204, 205 [1992]; Matter of Arnold, 173 AD2d at 699-700). Since the Supreme Court’s determination was warranted by the facts, we decline to disturb it.
The defendants’ remaining contentions are without merit. Eng, EJ., Skelos, Dickerson and Austin, JJ., concur.