World Ambulette Transp., Inc. v Lee (2018 NY Slip Op 03560)





World Ambulette Transp., Inc. v Lee


2018 NY Slip Op 03560


Decided on May 16, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2015-10576
 (Index No. 5641/13)

[*1]World Ambulette Transportation, Inc., respondent,
v
Kwan Haeng Lee, appellant.


Michael Konopka & Associates, P.C., New York, NY (Jose G. Rivera of counsel), for appellant.
Rha & Kim, LLP, Bayside, NY (Andrew D. Grossman of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for conversion, the defendant appeals from a judgment of the Supreme Court, Queens County (Marguerite A. Grays, J.), entered March 4, 2016. The judgment, insofar as appealed from, upon the granting of those branches of the plaintiff's motion pursuant to CPLR 4401, made at the close of evidence, which were to dismiss the defendant's second and third counterclaims, and upon a decision of the same court dated July 17, 2015, made after a nonjury trial, is in favor of the plaintiff and against the defendant in the total sum of $12,014.05 on the second cause of action and, in effect, dismissing the defendant's counterclaims.
ORDERED that on the Court's own motion, the defendant's notice of appeal from the decision is deemed to be a premature notice of appeal from the judgment (see CPLR 5520[c]); and it is further,
ORDERED that the judgment is modified, on the law and the facts, by deleting the provision thereof which is in favor of the plaintiff and against the defendant, in effect, dismissing the defendant's third counterclaim, and substituting therefor a provision in favor of the defendant and against the plaintiff on the third counterclaim and directing the plaintiff to permit the defendant to examine its books and records; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and that branch of the plaintiff's motion pursuant to CPLR 4401 which was to dismiss the defendant's third counterclaim is denied.
The plaintiff, a corporation providing medical transportation services, was incorporated by nonparty Dae Chong Chang (hereinafter Chang) in February 2010. The plaintiff commenced this action against the defendant, a former employee, inter alia, to recover damages for conversion. Specifically, the plaintiff alleged that the defendant misused corporate funds to pay for personal expenses.
In his answer, the defendant denied the allegations against him and asserted counterclaims to recover damages for breach of contract and wrongful termination of employment, and for an accounting. According to the defendant, he and Chang were equal shareholders of the plaintiff in accordance with an oral agreement they made approximately February 2010 when the plaintiff was formed. The defendant alleged that he and Chang thereafter executed a written [*2]agreement dated January 2, 2012 (hereinafter the written agreement). The defendant asserted that the written agreement was a "shareholder agreement," representing that he owned 49% of the plaintiff's shares. Chang denied these allegations and asserted that the written agreement was a "profit-sharing agreement," in which he promised to pay the defendant 49% of the plaintiff's profits from 2012.
At a nonjury trial, Chang and the defendant gave conflicting testimony as to their understanding of the written agreement, the circumstances under which it was executed, and the defendant's employment at the plaintiff. They also gave conflicting testimony as to whether the defendant was authorized to use funds in the plaintiff's checking account to pay for various personal expenses, or whether certain transactions reflected on the plaintiff's bank records were made on behalf of the plaintiff.
At the close of evidence, the plaintiff moved pursuant to CPLR 4401 to dismiss the defendant's counterclaims. The Supreme Court granted those branches of the plaintiff's motion which were to dismiss the defendant's second and third counterclaims, alleging wrongful termination of employment and for an accounting, respectively.
In a decision dated July 17, 2015, the Supreme Court, citing extrinsic evidence presented at trial relating to the parties' intent, concluded that the parties had "entered into nothing more than a profit sharing agreement, despite the wording of the agreement dated January 2, 2012." Accordingly, the court dismissed the defendant's first counterclaim, alleging breach of contract. In addition, the court determined that the defendant made unauthorized expenditures totaling $8,496.81. Based on these findings, the court, inter alia, determined that the defendant was liable for conversion as alleged in the second cause of action of the plaintiff's complaint. A judgment was subsequently entered upon the decision. The defendant appeals.
" In reviewing a determination made after a nonjury trial, this Court's power is as broad as that of the trial court, and it may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses'" (Quadrozzi v Estate of Quadrozzi, 99 AD3d 688, 691, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; Bryant v Broadcast Music, Inc., 143 AD3d 934, 935; Neiss v Fried, 127 AD3d 1044, 1046). "Where the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations" (Bennett v Atomic Prods. Corp., 132 AD3d 928, 930; see Neiss v Fried, 127 AD3d at 1046).
Contrary to the defendant's contention, we agree with the Supreme Court's determination that he was liable for conversion. In order " [t]o establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights'" (National Ctr. for Crisis Mgmt., Inc. v Lerner, 91 AD3d 920, 920, quoting Cusack v American Defense Sys., Inc., 86 AD3d 586, 587; see Nugent v Hubbard, 130 AD3d 893, 895; Mackey Reed Elec., Inc. v Morrone & Assoc., P.C., 125 AD3d 822, 824). " [C]onversion occurs when funds designated for a particular purpose are used for an unauthorized purpose'" (Petrone v Davidoff Hutcher & Citron, LLP, 150 AD3d 776, 777, quoting East Schodack Fire Co., Inc. v Milkewicz, 140 AD3d 1255, 1256; see Goldberger v Rudnicki, 94 AD3d 1047, 1048; Lemle v Lemle, 92 AD3d 494, 497; Meese v Miller, 79 AD2d 237, 243-244).
Here, the plaintiff presented credible proof that the defendant made numerous unauthorized purchases using the plaintiff's debit card, and the defendant failed to present a persuasive defense. Accordingly, we agree with the Supreme Court's determination that the defendant was liable for conversion (see Lemle v Lemle, 92 AD3d at 497; National Ctr. for Crisis Mgmt., Inc. v Lerner, 91 AD3d at 921; Lerner v Ayervais, 66 AD3d 644, 645; see also BNG Props., LLC v Sanborn, 153 AD3d 1221, 1222; Zwarycz v Marnia Const., Inc., 130 AD3d 922, 923; Gomez [*3]v Eleni, LLC, 122 AD3d 797, 798-799).
However, we disagree with the Supreme Court to the extent that it determined that the parties' written agreement constituted nothing more than a profit-sharing agreement. "A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations" (Landmark Ventures, Inc. v H5 Tech., Inc., 152 AD3d 657, 658; see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162; St. John's Univ., N.Y. v Butler Rogers Baskett Architects, P.C., 92 AD3d 761, 763). To this end, " a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms'" (Legum v Russo, 133 AD3d 638, 639, quoting MHR Capital Partners LP v Presstek Inc., 12 NY3d 640, 645). A contract is ambiguous if the terms are "reasonably susceptible of more than one interpretation" (Chimart Assoc. v Paul, 66 NY2d 570, 573; see Evans v Famous Music Corp., 1 NY3d 452, 458; Greenfield v Philles Records, 98 NY2d 562, 569). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts" (W.W.W. Assocs. v Giancontieri, 77 NY2d at 162; see Arnell Constr. Corp. v New York City Sch. Constr. Auth., 144 AD3d 714, 716). "[A] court should determine the intent of the parties from within the four corners of the contract without looking to extrinsic evidence to create ambiguities" (Hoeg Corp. v Peebles Corp., 153 AD3d 607, 608; see Brad H. v City of New York, 17 NY3d 180, 186; Consedine v Portville Cent. School Dist., 12 NY3d 286, 293; Innophos, Inc. v Rhodia, S.A., 10 NY3d 25, 29; Bailey v Fish & Neave, 8 NY3d 523, 528; South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277-278).
Here, we disagree with the Supreme Court's reliance upon extrinsic evidence to conclude that the parties had "entered into nothing more than a profit sharing agreement, despite the wording of the agreement dated January 2, 2012." Contrary to the court's conclusion, the written agreement was not ambiguous such that it could be construed as a profit-sharing agreement. The written agreement is entitled "Shareholder Agreement," and it contains numerous provisions setting forth the rights and obligations of shareholders. In addition, the written agreement provides in paragraph 5, under the section entitled "Warranties," that Chang owns 102 Class "A" shares and that the defendant owns 98 Class "A" shares. Accordingly, the plain language of the written agreement unambiguously demonstrates that the defendant was a shareholder (see generally All Seasons Fuels, Inc. v Morgan Fuel & Heating Co., Inc., 156 AD3d 591; Belle Harbor Wash. Hotel, Inc. v Jefferson Omega Corp., 17 AD3d 612, 612-613).
Under Business Corporation Law § 624, a shareholder " has both statutory and common-law rights to inspect the books and records of a corporation if inspection is sought in good faith and for a valid purpose'" (JAS Family Trust v Oceana Holding Corp., 109 AD3d 639, 642, quoting Matter of Liaros v Ted's Jumbo Red Hots, Inc., 96 AD3d 1464, 1464-1465). To prevail on a cause of action for an accounting, in addition to being a shareholder, a party must show that he or she demanded an accounting and that the demand was refused by the corporation, or that such demand would have been futile (see Walsh v Wwebnet, Inc., 116 AD3d 845, 846-848). Here, contrary to the Supreme Court's conclusion, the defendant sustained his burden of demonstrating his entitlement to an accounting. Accordingly, the court should have denied that branch of the plaintiff's motion pursuant to CPLR 4401, made at the close of evidence, which was to dismiss the defendant's third counterclaim for an accounting, and should have entered a judgment in favor of the defendant on that counterclaim and directing the plaintiff to permit the defendant to examine the plaintiff's books and records (see Matter of Koch v Specto Opt., 184 AD2d 701, 704; see also O'Brien v O'Brien, 75 AD2d 641; LoVerde v Interex Design & Equip. Corp., 54 AD2d 1090).
However, notwithstanding the defendant's status as a shareholder, he nevertheless failed to establish, as alleged in his first counterclaim, that the plaintiff breached the written agreement. Contrary to the defendant's contention, the written agreement did not entitle him to any employment position within the company, or to any salary. In addition, the defendant failed to demonstrate that he had any contractual right to dividends under the terms of the written agreement, or that the plaintiff otherwise breached the written agreement by failing to pay him a portion of any profits earned by the plaintiff. Finally, although the defendant is correct that the written agreement contains a "shot-gun provision" that, under certain circumstances, may entitle a shareholder to certain contractual rights, the defendant failed to demonstrate that he complied with the contractual [*4]requirements necessary to invoke that provision. Accordingly, contrary to the defendant's contention, he was not entitled to a judgment in his favor on his first counterclaim.
The defendant's contention that the Supreme Court erred in dismissing his second counterclaim to recover damages for wrongful termination is also without merit. While the defendant is correct that "[a] majority shareholder in a close corporation is in a fiduciary relationship with the minority" (Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 300), Chang was not required to hold a director's meeting on notice before terminating the defendant's employment as a driver and dispatcher at the plaintiff (see generally Ingle v Glamore Motor Sales, 73 NY2d 183, 188). Furthermore, given the absence of any agreement "establishing a fixed duration," the defendant's employment relationship with the plaintiff was "at will" and, therefore, "terminable at any time by either party" (Goldman v White Plains Ctr. for Nursing Care, LLC, 11 NY3d 173, 177 [internal quotation marks omitted]; see Sabetay v Sterling Drug, 69 NY2d 329, 333).
The defendant's remaining contention is without merit.
RIVERA, J.P., MILLER, BRATHWAITE NELSON and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court