18-1212
*Sigmon v. Goldman Sachs Mortgage Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of February, two thousand twenty.

Present:
> PIERRE N. LEVAL,
> REENA RAGGI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

---

WAYNE SIGMON, Trustee in Bankruptcy for Karen Lebauer Hindin,

> *Plaintiff-Appellant*,

v.        18-1212

GOLDMAN SACHS MORTGAGE COMPANY, MLQ DML HOTEL, L.L.C., MLQ DML SPA L.L.C., MLQ DML RESTAURANT, L.L.C.,

> *Defendants-Appellees*.

---

For Plaintiff-Appellant:        DAVID F. MESCHAN, David F. Meschan, PLLC, Greensboro, NC

For Defendants-Appellees:        CLIFFORD THAU (William L. Wallander, Marisa Antos-Fallon and Bryan Hogg, *on the brief*), Vinson & Elkins, LLP, New York, NY

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Andrew L. Carter, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The trustee in bankruptcy for Karen Lebauer Hindin ("Hindin"), Wayne Sigmon ("Trustee"), appeals from a grant of summary judgment, entered on March 26, 2018, to Goldman Sachs Mortgage Company, MLQ DML Hotel, LLC, MLQ DML Spa, LLC, and MLQ DML Restaurant, LLC (collectively, "GS Mortgage"). The Trustee filed suit alleging, *inter alia*, that, pursuant to an agreement entitled the Deed in Lieu of Foreclosure Agreement ("Agreement"), Hindin conveyed her interest in or right to receive distributions from a limited liability company, Dakota Mountain Lodge, LLC ("Dakota LLC"), to GS Mortgage and that this transfer was voidable under Utah's constructive fraudulent transfer law. GS Mortgage argued, and the district court agreed, that the Agreement does not provide for such a transfer and that no such transfer occurred. On appeal, the Trustee challenges that conclusion. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* the award of summary judgment, 'construing the evidence in the light most favorable to the nonmoving party' and 'drawing all reasonable inferences and resolving all ambiguities in its favor.'" *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)) (brackets omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A district court's construction of a contract is reviewed *de novo*. *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 40 (2d Cir. 2019). "Where the terms of a contract

are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014). "[C]ontract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 148 (2d Cir. 2017) (quotation marks and citation omitted). "'Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide.'" *Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)).

As relevant here, Hindin held a 50% interest in Dakota LLC, which, through various other entities (collectively, the "Borrowers"), was the partial owner of a ski resort in Utah ("Property"). GS Mortgage extended to the Borrowers a loan in connection with the Property; Hindin served as a guarantor, pledging her interest in Dakota LLC as collateral if the loan went into default. The Borrowers eventually defaulted but GS Mortgage did not foreclose, instead entering into the Agreement with the Borrowers. The Agreement provided that the Borrowers would transfer "Desired Collateral" to GS Mortgage in satisfaction of outstanding debts. The Trustee contends that the Agreement required GS Mortgage expressly to exclude any collateral pledged in connection with the original loan that was not to be part of the transfer. In other words, because the Agreement does not explicitly exclude Hindin's interest in Dakota LLC (or her right to receive distributions from that entity) from "Desired Collateral," those interests were conveyed to GS Mortgage pursuant to the Agreement. We disagree.

3

The operative language of the Agreement appears in Section 2.1, which reads: "Borrowers intend to . . . transfer . . . all Desired Collateral and certain other agreements (collectively, the 'Transferred Assets') to one or more . . . Transferees pursuant to the Transfer Documents . . . ." A. 377 (underline omitted). "Transfer Documents" is defined as "the documents and deliveries listed in Exhibit B, and such other documents as [GS Mortgage] reasonably requires to accomplish the Transfer." A. 377 (underline omitted). "'Desired Collateral' means all of the Collateral except such portions of the Collateral as [GS Mortgage] may elect not to have transferred . . . ." A. 375 (underline omitted). [1] The Agreement also states that the transfer was to be "implement[ed], formalize[d], and complete[d]" by "signing, acknowledging, and delivering . . . all documents listed in Exhibit B." A. 378.

In accordance with the foregoing terms, GS Mortgage omitted documents conveying Hindin's interest in Dakota LLC from Exhibit B. Exhibit B lists seventeen categories of documents, many of which relate to the transfer of title to the Property. None reference a transfer of Hindin's interest in Dakota LLC. Indeed, there is no affirmative indication anywhere in the Agreement of an intent to transfer Hindin's interest.

While it is true that the Agreement defines "Transfer Documents" to include not just those listed in Exhibit B but also "such other documents as [GS Mortgage] reasonably requires to accomplish the Transfer," other provisions confirm that the Agreement unambiguously did not transfer Hindin's LLC interest. First, only two items are explicitly listed as part of the "Transfer": "the Mortgaged Property and all escrow, reserve, and impound accounts arising under the Loan Documents." A. 377. In other words, the parties agreed that the Property itself and certain

---

[1] "Collateral," as used in the original loan agreement, included the Property, Hindin's interest in Dakota LLC, and various other interests, accounts, and assets.

accounts would be transferred but evinced no such intent in their Agreement as to Dakota LLC. Similarly, the Agreement's preamble states that "Borrowers desire to transfer the Mortgaged Property," A. 374; *see, e.g.*, *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (considering preamble as evidence of contract meaning), indicating that the primary subject of the Agreement was the transfer of the Property. Additionally, Section 2.1 indicates that the "*Borrowers* intend to . . . transfer" the Desired Collateral. A. 377. While the Borrowers owned portions of the Property, they did not own Hindin's LLC interest and therefore lacked the power to transfer it. Finally, Section 4.3 of the Agreement instructs the "Principals"—including Hindin—to promptly dissolve every member of each Borrower, which includes Dakota LLC. This lends further support to our conclusion that the parties intended for Hindin to remain in control of Dakota LLC. Thus, reading the Agreement as a whole, it is clear that a transfer of Dakota LLC was not part of the arrangement.

As an alternative argument, the Trustee contends that Section 3.1 of the Agreement independently transferred Hindin's interest to GS Mortgage. Not so. Section 3.1 only refers to rights in the "Transferred Assets." These are the same assets defined in Section 2.1 as "all Desired Collateral and certain other agreements." A. 377. Thus, Section 3.1 does not transfer any rights independent of those transferred pursuant to Section 2.1. And the Trustee offers no basis for concluding that the phrase "other agreements" encompasses Hindin's interest in Dakota LLC. Accordingly, we agree with the district court that Section 3.1 merely reiterates that the transfer described in Section 2.1 is absolute and complete without effecting any additional transfer.

\*   \*   \*

Because we conclude that the Agreement is unambiguous, we do not consider the Trustee's arguments based on parol evidence. *Innophos*, 10 N.Y.3d at 29. We have considered the

Trustee's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM**

the judgment of the district court.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk